This is 17-1872 Medical Mutual Insurance Co. of Maine v. Douglas Burka Good morning, Your Honor. My name is Chris Dinan and I represent the appellant, Douglas Burka, in this matter. I wish to reserve two minutes for rebuttal. Yes. Thank you. There are three issues that I wanted to start off with. I just want to mention two of them in passing. One is that Maine has ruled repeatedly that it has viewed the duty to defend as incredibly broad. We went through the history of those rulings in our brief and the overwhelming majority of cases finds that there is a duty to defend. The second policy in Maine is that any ambiguity in the policy is viewed strictly against the insurer. Thank you. Yes. I sometimes misstate guilty and not guilty as well, so I appreciate that. Welcome to my world. It's good it's a civil case. The thing that I mentioned below and in our briefs here that I think may have not been the case, is that the two points, the complaint in Maryland and the complaint in Maine, have a theory of recovery based upon a statute that requires proof that Dr. Burka was in a health care relationship with his then wife, Allison. It is clear under both statutes that to prevail you have to prove that you were a patient of the person who violated the confidentiality of the medical records. So all of the discussion that we have in various ways about whether Allison was or was not a patient is undercut by those two statutory claims, which establishes in my view very clearly that one of the things that could be proven at trial, in fact, if they were to recover on those two statutes, had to be proved at trial, was that she was a patient of Dr. Burka. Neither statute, nor any invasion of privacy claim that was made, which had been the focus of our claims for coverage, those two counts in each complaint, none of those claims require any proof of intent, any proof of malice, or any evil motive. Unlike a case such as Barney's, which has been cited by both sides, in which suggesting in Barney's that it was an assault, or that there is some evil motive outside the professional relationship, in this case, unlike Barney's, where saying that it's an assault gets you into a specific exclusion, that doesn't happen here. We are not talking about some intentional act exclusion, or some exclusion for when you wish to harm a patient. There is no such exclusion. The only issue that we have here, having established that she was a patient, is whether this was in the course of professional services. Excuse me, I want to be sure I understand your argument, counsel. You're suggesting that there is, in order to establish a statutory violation, either in Maryland, or in Maine, there's no need to establish that there was some kind of a doctor-patient relationship? Quite the opposite. Okay, spell that out a little more for me, please. Both statutes are set up, and I'm trying to do this by memory, I have it keyed up in my phone, but the Maryland statute starts off with a health care provider will not breach the confidential records of a patient, or recipient. I'll be honest with you, I don't know what that means. Maybe recipient of health care services. The Maine statute similarly deals with the statute under which she made a claim, deals with a health care provider disclosing or improperly accessing medical records of a patient. So, it's not a fact, even if that's true, counsel, you have given notice to the insurance company that they have a duty to defend, and they're under the insurance policy in place, and they say, I believe, that under the insurance policy, forget that statutory argument you just made, that under the insurance policy, in the absence of the provision of health care services by the doctor, there is no duty to defend. So, I don't see, even though you may be right, it doesn't matter what the statute would permit in terms of establishing liability, that doesn't answer their argument that under the terms of the insurance policy, they have no obligation to defend such a claim. Well, right, they then want, exactly, the next step of my requirement of getting coverage is to show that there were professional services that were being rendered. Two issues with that. One, one we've talked about, just to basically highlight that it is ambiguous, the court below found that it was ambiguous, and that it was a central element, as we can see, because it's where we go to once we realize she's a patient. But the second piece is that it is incredibly broadly defined. Doctors have so many things on their plate that can be considered professional services. The patient relationship in this case is not required by the statute to be specifically between Dr. Berka and Allison. It can be a patient relationship with anyone in that practice. The professional services, for instance, let's think of things that we might expect a doctor to want to do. A colleague asks you to consult on someone that's not your patient, but asks you to take a look at the records, and you discuss it with him. That is something that, that is, she does not know what he was doing when he accessed the records. She has come up with a theory that it was to punish her. But she doesn't know that. And she doesn't need to prove that to recover under the very quiet theories of liability she has. It's very lax professional obligations. Let me just, if I might just ask you this. You seem to be saying that because there's some ambiguity in the meaning of professional services that virtually anything that this doctor did, even if it had nothing to do with provision of health care services, because he's doing it in some professional capacity that, again, given the ambiguity of the insurance policy, that it can be viewed as somehow the provision of professional services? That seems to be your position. I see that I'm running to the end of my time. Thank you. Please continue. I agree that there must be some reasonable limits. But my belief is that if you don't define a critical policy term clearly and unambiguously, then you cannot rely on it. So given the definitions they have used, I do agree that if there's a doctor-patient relationship within the context of the claim, then yes, there would be a doctor-patient relationship with any doctor in the practice at the hospital, regardless of whether it's this doctor. That is the definition of a patient incident. Just so I understand, the limiting principle is the word handling, in the sense that this applies to the handling of records. So if I understand, I think this is the argument that I understood you were making. The professional services are being rendered by the practice to the patient, which is why the records are there. So the records are there in the provision of professional services. Anybody who is an insured, which he is, who handles those records as an insured, then has the duty to defend. That's the argument. That is my argument. Even if that's not clear, you'd say that's at least a reasonable construction of it. And since it's a reasonable construction of it, you get the benefit of the protection. Yes. And my follow-up to that is, and if that's not the idea, then what is the coverage that's provided by the third definition of professional services? Because you don't get sued for handling them appropriately. Thank you. Good morning. May it please the Court. My name is Christopher Tainter, and I represent Medical Mutual Insurance Company of Maine. This case requires the Court to consider the extent to which, under Maine law, an insurer that is asked to defend its insured against a lawsuit or against more than one lawsuit is required to engage in a process of speculation. And specifically, the question is whether an insurer that is presented with a detailed pleading that is clearly intended to allege a course of conduct outside the scope of the coverage is required to hypothesize the possibility that if the case goes to trial, the plaintiff might theoretically present a case that's fundamentally different than what's alleged in the pleadings. There are two lawsuits that were brought here against Dr. Douglas Berka. One brought in Maine by his wife, Allison Berka, now known as Allison Cain. Another brought in Maryland by Allison and her parents, Howard and Caroline Cain. Before you go to, just so I, you can see that there's no exclusion for intentional conduct or anything like that? Not as to the duty to defend. Right. So I guess I just, what's wrong with a construction of the provision in the insurance contract that says as long as you're an insured handling patient records, you are protected against any claim of mishandling them? Why would that be so surprising? Subsection 3 of the definition of professional services, which I think is what you're referring to, protects the insured against liability in the handling of records in the direct course of providing professional services, which means health care services, because it can't mean other matters. So the key thing is the provision of professional services and not to that person? I think Mr. Dinah was talking about something different. I'm talking about it right now. There's that phrase, to that person, which I thought you were making a big deal, that's got to be providing professional services to that particular patient. It clearly does. The thing that's odd about that then is if I'm a doctor and I'm providing professional services to Chief Judge Howard and I go to get his records and I accidentally pull Judge LePez's records and I leave them on a bus, Judge LePez now sues me for my negligence in handling and exposing all his personal detail to the public. On your theory, you don't have to defend me in that claim because I wasn't providing professional services to Judge LePez. I was providing to Judge Howard. That would strike me as an insured surprising. Well, no, I guess you're right. In that hypothetical situation, that's a hypothetical situation I hadn't considered when I answered your last question. So I suppose to me the question is whether the insured is actually providing professional services. Clearly in that situation, you would have been trying to provide professional services to Judge Howard. That would have adversely affected Judge LePez. You'd be covered, I believe. So it wouldn't be to that person. Then I start to think, well, what does this phrase mean? So I think in the vast majority of cases, I think that definition of professional services was probably drafted to deal with the overwhelming majority of circumstances. But that sort of lends its support to your opponent's position, which is why wouldn't we just consider professional services to that person as being provided by the practice? And now the question is in handling it, and that would fit with the exclusion for the data breaches, right? Why would you have the exclusion for the data breaches? Because the data breach exclusion on your theory would be completely unnecessary because the person that's doing that infiltration obviously isn't providing any professional services to anyone. Well, I think the key issue is that from our standpoint, what is important in terms of determining whether or not Dr. Berko is providing professional services within the meaning of the policy is not who he was providing them to, but whether the services described in the complaints are professional services at all. Because there is no allegation that it was anything like the hypothetical you described. But then why would you have the exclusion for the data breach? You wouldn't need it, right? Well, there's actually a separate policy issue within the policy package for data breaches. Well, Counsel, you have this alternative argument about the coverage provision in the policy, which refers to services rendered within the scope of their duties as a physician, employee, or contractor. I gather it's your position that if you look at the allegations in the complaint, there's no suggestion from those allegations that what Dr. Berko is alleged to have done was within the scope of his duties as a physician. That's correct. I'm sorry. So there's no allegation that he was acting within the scope of his employment with his employer of SMHC physician services. There's no allegation that he was rendering health care services to Allison Berko or to anyone else. All of the allegations focus on the fact, or the assertion, that he was invading his estranged wife's reproductive health file and mental health file in order to essentially emotionally abuse her and to act in a vindictive way to gain leverage in divorce proceedings and to do a whole slew of things that have absolutely nothing whatsoever to do with the rendering of professional services. And what Dr. Berko has asked Medical Mutual to do is to do two things. One is to read into the complaints these allegations or these notions that possibly he was acting within the scope of his employment for physician services, to read into the complaints the notion that perhaps he was rendering professional services and to read out of the complaint all of these allegations that he was essentially acting for ulterior, selfish, malicious purposes. And those are things that, despite, I agree with Attorney Dinen, that the duty to defend in Maine, as in most states, is incredibly broad. But in the most recent decision, the 2017 decision in the Barney's Bar and Grill case, which we both cited at length, the law court has said that an insurer is not required to do either of those things, either read into the complaint things that aren't there or to read out of the complaint things that are there. So under that most recent interpretation of the law, it's our opinion that Judge Singleton got it right in finding nobody to defend. The other thing that I might add briefly, because Attorney Dinen touched on it at the beginning, has to do with these two statutes, the Maine and the Maryland statute. In fact, both the Maryland statute and the Maine statute require a plaintiff, in order to prevail, to prove that the physician acted knowingly or intentionally unlawfully. The section of the Maryland health code under which the Keynes sue provides that a health care provider or any other person who knowingly violates any provision of the law is liable for actual damages. The Maine statute, upon which Allison Burke is sued, provides that an individual who is aggrieved by conduct in violation of the statute, excuse me, in violation of the section, may bring a civil action against a person who has intentionally unlawfully disclosed health care information. So neither, despite Attorney Dinen's argument, neither of those statutes permit the Keynes or Allison Burke to recover against Douglas Burke merely for having negligently or innocently violated their right of medical privacy. So I think that summarizes our argument. If there are no further questions, I simply ask the court to affirm the judgment of the district court. Just so I get the logic of that, because the complaint makes the violation, requires the violation to be intentional, you're effectively saying there's just no way you could be providing professional services and be liable.  I didn't understand that, Your Honor. You're saying because the nature of the claim, the complaint, is that the violation of privacy has to be intentional, there's simply no way that there could be a violation if he was actually providing professional services. Is that the idea? I think to break that down into two parts, I think because the allegations in both complaints allege exclusively intentionally wrongful malicious conduct, and because the statutes under which suit has been brought allow recovery only for knowingly or intentionally wrongful conduct. There is no claim here, and there can be no claim, that would sort of mirror the hypothetical that you laid out at the beginning of the argument, that this was just sort of an honest or negligent error. There's nothing in either of these cases. I'm trying to figure out what follows from that that ties into the language of the insurance contract. It sounds like what you're saying is what follows from that is that, and therefore the claim being brought in Maine and Maryland against the insured here can't be claims that he was engaged in professional services. Correct. Is that conclusion necessary for your argument to work? I don't think so. I also have the argument that neither complaint alleges that Dr. Berka did what he did within the scope of his employment with the named insured in the policy. This was not an insurance policy issued to Dr. Berka. It was issued to SMHC Physician Services. His coverage depends entirely on his being sued for something he did in the course and scope of his employment with that employer, and there's no such allegation in either complaint. Thank you. Mr. Dyer, perhaps you're going to do that anyhow, but would you please address that coverage issue, which is presented by your opponent as sort of an alternative basis for affirming the district court? The last point you made. Yes. The scope of services issue, I'm afraid. Yeah, I mean, the scope of services, I think, gets back to how confusing the definition of professional services is. But they alleged that he worked for Southern Maine Health Care. Clearly the reason he had access was there were records in the Southern Maine Health Care group. The reason he could access the records was because he was a doctor who had access to them. Obviously the reason he had access to them was because of his employment. I think that the interconnection of the various entities that are addressed in the pleadings makes it clear that they never hit the nail right on the head, but that's never been what's required to determine a duty to defend. Let me just try to make my question a little more precise. I'm looking at the coverage language of the policy, and it talks about coverage afforded to insured physicians under this policy is limited to claims, then skipping some language for professional services, rarely within the scope of their duties as a physician employee. Reading the complaints in the Maryland and Maine Action, I don't believe I see any allegations describing the conduct of Dr. Berka that could in any way be read as describing him providing professional services within the scope of his duties as a physician. I view that distinction as being very similar to an intentional act versus negligent act distinction that we address many times in other insurance settings. The complaint alleges that you intended to hurt me, but the courts have repeatedly stated that leaves open the possibility that it could be negligent. Here, she alleges that you did this intending to hurt me, and she never says, and outside the doctor-patient relationship, but that is certainly the feel people get from it. But the theories of liability, the legal theories, do not allow the potential that the actual activities could be just, as Judge Barron previously suggested, that there could be appropriate access that turns out to be wrong. The complaint seems to be alleging this, that whether he was acting intentionally, maliciously, or perhaps negligently, whatever he was doing with those records, it was for his own purposes. It had nothing to do with his work as a physician. That allegation is found over and over again in the complaints. It was all about him, and for his own purposes, had nothing to do with his work as a physician. That is certainly her perspective on it in the complaint. However, to prevail at trial, there is the potential that after discovery, she will determine that the proof is that he had accessed her records at her request and then accessed them subsequently as well, in a way that could be determined to be inappropriate. That certainly would have been his defense. Are you preserving an argument, or not making this argument, that even if he was doing it, she's alleging he did it himself, in a malicious way, not in the scope of his employment, the text that Judge Lopez read to you about the coverage still entitles him to the duty to defense because the professional services being rendered are the holding of her records as a patient of the practice? Yes. That second point? Yes. So if that second point is right, then it doesn't much matter whether she's alleging he did it for evil reasons or negligent reasons, because whatever way she alleges the coverage he gets entitles him to a duty to defend so long as he accessed the records as ensured that were being held to protect her. Yes. And my final point is that what people think about why someone else did something is notoriously unreliable. And this huge case that went on for an extended period of time in both Maryland and Maine, he didn't get a duty to defend because she thought she knew what was in his head and Medical Mutual decided to rely on that. I ask that you reverse the flow of what's holding. Thank you. Thank you.